# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **NIGEL JACKSON** | : | **DOCKET NO. 04-1926** |
| **VS.** | : | **JUDGE MINALDI** |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds that the Commissioner's decision is not supported by substantial evidence in the record. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

On January 31, 1984, the Commissioner determined that Nigel Jackson was disabled and entitled to disability insurance benefits with an onset date of February 18, 1983. (Tr. 166-171). Jackson's disability stemmed from impairments consisting of: drug and alcohol addiction, seizures controlled by medication, severe and recurring headaches, and mental retardation. *Id*. In 1996, Congress passed the Contract with America Advancement Act (CAAA) which amended the Social Security Act to provide that an individual would not be considered disabled if alcoholism or drug addiction was a contributing factor material to the Commissioner's disability

determination. 42 U.S.C. § 423(d)(2)(C). Over six years later, the Commissioner notified

Jackson that his disability benefits would end effective May 1, 2003, because benefits were no

longer payable to persons whose disability was based on drug addiction or alcoholism. (Tr. 172-

174).[1] Jackson requested reconsideration of the adverse decision, but the denial was upheld. (Tr.

174A-177).

Accordingly, Jackson requested and received a December 15, 2003, hearing before an

Administrative Law Judge ("ALJ"). (Tr. 1068-1093). In a March 25, 2004, written decision, the

ALJ found that Jackson had not been under a disability since May 1, 2003. (Tr. 11-22). Jackson

appealed the adverse decision to the Appeals Council. Yet, on July 12, 2004, the Appeals

Council denied Jackson's request for review, and the ALJ's decision became the final decision of

the Commissioner. (Tr. 4-6).

Jackson now seeks to have this court review the termination of benefits. He alleges the

following errors:

(1)     the ALJ's finding that drugs or alcohol abuse are material to this case is not
        supported by substantial evidence;

(2)     the ALJ's residual functional capacity assessment is not supported by substantial
        evidence;

(3)     the ALJ erred in not determining whether claimant can obtain and maintain
        employment;

(4)     the ALJ failed to apply the "slight abnormality" standard to plaintiff's intellectual
        impairment;

---

[1] The amendment required the Commissioner to complete the entitlement
redetermination (including a new medical determination) no later than January 1, 1997. PL
104-121, 1996 HR 3136. Presumably the benefits review was not conducted earlier because
benefits were suspended while Jackson was incarcerated for drug distribution. *See*, 42 U.S.C. §
402(x).

(5)      the ALJ erred in relying on the vocational expert's testimony; and

(6)      the ALJ's finding of medical improvement is not supported by substantial evidence.

## **STANDARD OF REVIEW**

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented him from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## **LAW AND ANALYSIS**

The secretary evaluates disability claims under the Social Security Act through a five-step

process:[2]  (1)  Is the claimant currently working and engaged in substantial gainful activity?  (2)

Can the impairment or combination of impairments be classified as severe?  (3)  Does the

impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations?  (If

so, disability is automatic.)  (4) Does the claimant's residual functional capacity permit him to

perform past relevant work?  and if not, (5)  Can the claimant perform other work?  20 C.F.R. §§

404.1520, 416.920.  When a finding of "disabled" or "not disabled" may be made at any step, the

process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  The first four steps

place the burden upon the claimant.  At the fifth step, the burden shifts to the Secretary to

establish that the claimant can perform other work.  If the Secretary meets this burden, then the

claimant must then prove that he cannot in fact perform the work suggested. *See  Falco v.

Shalala*, 27 F.3d 160 (5th Cir. 1994);  *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

**Issues 1-3**:

The ALJ found at Step Two of the sequential evaluation process that Jackson suffered

from severe impairments of:  post-traumatic arthritis of the right knee, a history of a seizure

disorder, reduced vision in the left eye, substance dependence, and a history of schizophrenia, in

remission.  (Tr. 13, 21).  The ALJ further found that Jackson's impairments met or equaled

Listing 12.03 in the Category of Impairments in Appendix 1 to Subpart P, Social Security

---

[2]  Ordinarily, when determining whether to terminate existing disability payments or SSI benefits, the Commissioner uses an eight-step sequential analysis.  *See*, 20 C.F.R. § 404.1594. However, when existing benefits are terminated due to a change in the law, the termination of benefits standard of review is inapplicable.  *See generally, Hilton v. Commissioner of Social Sec.*, 2002 WL 32152290 (D.Conn. 11/25/02)(applied five-step sequential analysis); *Yancy v. Massanari*,  2001 WL 881358(N.D. Ill. 8/3/01)(applied five-step sequential analysis); *compare*, *Waters v. Barnhart*,  276 F.3d 716, 718 (5th Cir. 2002); *see* discussion, *infra*.  Accordingly, the ALJ correctly applied the five-step sequential evaluation procedure.

Regulations No. 4. (Tr. 14, 21). Thus, Jackson ordinarily would have been declared disabled and benefits continued.

However under the Social Security Act, as amended, an individual will not be considered disabled for purposes of disability insurance benefits if alcoholism or drug addiction was a contributing factor material to the Commissioner's determination that the individual is disabled. 42 U.S.C. § 423(d)(2)(C). "Drug or alcohol abuse is material to a disability if the ALJ would not 'find [the claimant] disabled if [the claimant] stopped using drugs or alcohol.'" *Brown v. Apfel*, 192 F.3d. 492, 499 (5th Cir. 1999) (quoting, 20 C.F.R. § 416.935(b)(1)).

The ALJ found that Jackson, while abusing cocaine and alcohol, demonstrated illogical thinking and blunt affect, thus meeting the symptomatic requirements of listing 12.03. The ALJ further determined that Jackson, while abusing substances, exhibited moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation. (Tr. 14). These limitations satisfied the functional requirements of listing 12.03. *Id*. Nevertheless, the ALJ determined that while abstaining from drug and alcohol use, Jackson did not have the symptoms or limitation of function necessary to meet listing 12.03. (Tr. 15).

Even so, drug or alcohol abuse is material to disability only if the ALJ would not find the claimant disabled if he stopped using drugs or alcohol. *Brown, supra*. Critical to this determination is the ALJ's assessment of Jackson's drug and alcohol-free mental residual functional capacity. The instant ALJ determined that Jackson retained the residual functional capacity to perform medium work, limited by the inability to work at heights or around

dangerous machinery. (Tr. 18, 21-22).[3] Jackson's mental impairments (aside from drug and

alcohol use) further reduced his work capacity to one and two-step jobs with limited public

interaction with the public. *Id.* However, we find that the instant record lacks substantial

evidence to support the mental component of the ALJ's assessment. *Id.*

On July 9, 2003, Jackson was seen by James Quillin, Ph.D. for a psychological

evaluation. (Tr. 871-872). Quillin observed that Jackson appeared capable of understanding and

following simple directions and instructions without too much difficulty. *Id.* His reading

_____

[3]    Medium work is defined and explained by Social Security Ruling 83-10. It provides:
[t]he regulations define medium work as lifting no more than 50
pounds at a time with frequent lifting or carrying of objects
weighing up to 25 pounds. A full range of medium work requires
standing or walking, off and on, for a total of approximately 6
hours in an 8-hour workday in order to meet the requirements of
frequent lifting or carrying objects weighing up to 25 pounds. As
in light work, sitting may occur intermittently during the remaining
time. Use of the arms and hands is necessary to grasp, hold, and
turn objects, as opposed to the finer activities in much sedentary
work, which require precision use of the fingers as well as use of
the hands and arms.

The considerable lifting required for the full range of
medium work usually requires frequent bending-stooping.
(Stooping is a type of bending in which a person bends his or her
body downward and forward by bending the spine at the waist).
Flexibility of the knees as well as the torso is important for this
activity. (Crouching is bending both the legs and spine in order to
bend the body downward and forward). However, there are a
relatively few occupations in the national economy which require
exertion in terms of weights that must be lifted at times (or involve
equivalent exertion in pushing or pulling), but are performed
primarily in a sitting position, e.g., taxi driver, bus driver, and tank-
truck driver (semi-skilled jobs). In most medium jobs, being on
one's feet for most of the workday is critical. Being able to do
frequent lifting or carrying of objects weighing up to 25 pounds is
often more critical than being able to lift up to 50 pounds at a time.
Social Security Ruling 83-10

recognition was measured at the third grade level.  *Id.*  He could perform simple arithmetic

operations.  *Id.*  The possibility of borderline intellectual functioning could not be ruled out.  *Id.*

Jackson was moody, irritable, and appeared somewhat paranoid.  *Id.*  Quillin diagnosed a history

of cocaine dependence in uncertain remission; likely mixed personality with sociopathic and

paranoid features; and depression NOS.  *Id.*  Jackson's status was poor.  *Id.*  Quillin opined that it

was very doubtful that Jackson could make a satisfactory adjustment to a more functional status.

*Id.*  Abstinence from cocaine was essential.  *Id.*  However, Quillin's evaluation did not

distinguish between Jackson's mental status while abusing drug and alcohol, and his mental

impairments and related limitations while drug and alcohol free.

Relying on Quillin's evaluation, a non-examining agency physician, Jack L. Spurrier,

Ed.D., completed a mental residual functional capacity assessment ("MRFC").  (Tr. 873-876).

He indicated that Jackson had moderate limitation in his ability to:  understand and remember

detailed instructions; carry out detailed instructions; work in coordination with, or proximity to

others without being distracted by them; interact appropriately with the general public; and to set

realistic goals or to make plans independently of others.  *Id.*  Spurrier stated that the MRFC

contained significant limitations that would preclude successful adaptation to the work setting.

*Id.*  However, Spurrier noted that abstinence from drugs would significantly improve his

functional ability, and that, therefore drug and alcohol abuse was material.  *Id.*

Spurrier did not explain whether the MRFC that he completed was an indication of

Jackson's limitations while using drugs or while abstaining therefrom.  If it reflects the former

condition, then it is of no use in assessing the latter condition which is the focus of our instant

inquiry.  If the MRFC reflects Jackson's mental limitations while abstaining from substance

abuse, then it is inconsistent with the ALJ's residual functional capacity assessment.[4]

As we gather from the ALJ's decision, the mental residual functional capacity assessment is quilted together from portions of the examining consultant's report, the claimant's testimony, and from physicians' notes compiled during Jackson's multiple admissions to Veterans Administration treatment facilities. In fact, the ALJ cited Jackson's dramatic improvement in functioning during his most recent inpatient treatment as "proof" of the materiality of Jackson's substance abuse,. (Tr. 15). While the ALJ correctly noted Jackson's improvement in GAF (Global Assessment of Functioning) scores during his most recent admission (September-November 2003), he overlooked that at the time of Jackson's prior admission on August 11, 2003, he was drug free. (Tr. 1041).[5]

Physicians' notes from the August 11, 2003, admission indicate that Jackson was angry and intimidating. *Id.* He reported that he had had a physical altercation with his neighbor. (Tr. 1040). The physician noted that Jackson had a pattern of anti-social and violent behavior towards others. (Tr. 1041). Jackson was diagnosed with schizophrenia, paranoid type; a history of polysubstance abuse/dependence; and antisocial personality disorder. *Id.* A GAF of 55 was assigned. *Id.*[6] During his stay at the facility, Paul Molinar, M.D. assigned Jackson a GAF of 45.

_____

[4] Indeed, Spurrier recognized that the MRFC contained significant limitations that would preclude successful adaptation to the work setting. *Id.*

[5] *See also*, Tr. 1005.

[6] A GAF of 55 denotes moderate symptoms or moderate difficulties in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition DSM-IV, p. 32.

(*See*, Tr. 1018).[7]  Presumably during this admission, Jackson remained drug and alcohol free.  On September 3, 2003, Jackson was discharged by Molinar with a GAF of 70.  (Tr. 924-925).  In sum, Jackson's treatment records reveal that even while abstaining from drug and alcohol use and living in a controlled environment, Jackson periodically exhibited moderate to serious impairment of functioning.  As in *Brown*, "nowhere in these records do any of [claimant's] doctors express an opinion as to what [claimant's] condition would be if [he] ceased abusing drugs or alcohol." *Brown, supra*.  Nor can we discern it from the remainder of the record.

Also troubling is the apparent instability of Jackson's mental impairment as evidenced by the fluctuating GAFs and the instances of decompensation even while sober.  This concern is succinctly crystalized by Dr. Molinar who, in a November 4, 2003, letter, wrote that he treated Jackson from August 18, 2003, until September 3, 2003, and that Jackson appeared unable to maintain gainful employment.  (Tr. 1065).[8]  It is precisely this sort of record that compels the ALJ to determine not only that the claimant can find work, but that he can also hold that employment for a significant period of time.  *Moore v. Sullivan*,  895 F.2d 1065, 1069 (5th Cir. 1990); *Singletary v. Bowen*, 798 F.2d 818 (5th Cir.1986).

Accordingly, we find that the ALJ's residual functional capacity assessment is not supported by substantial evidence.  As the ALJ's Step Five determination was premised upon the unsupported assessment, we necessarily find that the ALJ's ultimate conclusion that Jackson was

---

[7]  A GAF of 45 denotes serious symptoms or any serious impairment in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition DSM-IV, p. 32.

[8]  Molinar also opined that Jackson was totally disabled.  *Id*.  However, the ALJ rightly assigned no weight to that portion of the statement.  *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).

not disabled is also not supported by substantial evidence.[9]

Plaintiff asks the court to award interim benefit pay status pending resolution of the remand proceedings. *See*, *Drounett v. Apfel*, Civil Action Number 98-2328 (W.D. La. 9/15/99 Report and Recommendation and 10/19/99 Judgment).  However, *Drounett* relied on 42 U.S.C. § 423(g) which authorizes interim benefits when, *inter alia*, the physical or mental impairment for which benefits were payable is found to have ceased, not to have existed, or to no longer be disabling, and as a result, the individual is determined not to be entitled to such benefits.  42 U.S.C. § 423(g).  However, a determination that a physical or mental impairment for which benefits were payable has ceased, did not exist, or is no longer disabling, is dependent upon a finding of medical improvement, an advancement in medical technology or techniques, or new evidence demonstrating that the prior determination was erroneous.  42 U.S.C. § 423(f).  Those findings are absent here, and thus § 423(g) is inapplicable.

For the foregoing reasons,

IT IS RECOMMENDED that this matter be REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.

IT IS FURTHER RECOMMENDED that plaintiff's request for an award of interim benefits be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS**

---

[9]  Plaintiff's remaining assignments of error can be addressed upon remand.

**AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10)**

**BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED**

**PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN**

**ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL**

**CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 24th day of October, 2005.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE